The Honorable Ralph D. Turlington Commissioner Department of Education The Capitol Tallahassee, Florida 32301
Dear Commissioner Turlington:
This is in response to your request for an opinion on substantially the following questions:
 1. DO PUBLIC COMMUNITY COLLEGES HAVE AUTHORITY TO EXPEND COLLEGE FUNDS, INCLUDING APPROPRIATED STATE FUNDS, FOR COLLEGE PERSONNEL TO ATTEND LEGISLATIVE SESSIONS, COMMITTEE MEETINGS AND TO MAKE RELATED CONTACTS WITH LEGISLATORS TO PROVIDE INFORMATION AND LOBBY FOR OR AGAINST LEGISLATION AFFECTING INDIVIDUAL COLLEGES OR THE COMMUNITY COLLEGE SYSTEM AS A WHOLE?
 2. IF SUCH AUTHORITY EXISTS, ARE SUCH EXPENDITURES LIMITED IN ANY WAY AS TO TYPE, PURPOSE, OR AMOUNT?
Your letter of inquiry notes that Florida Junior College has received an adverse comment by the Auditor General with respect to the use of college funds by college personnel for lobbying purposes.
The "Audit Comments" of the Auditor General note, inter alia, his reliance on AGO 77-8, which concluded that pursuant to Florida law public funds may not be expended by a county or district or other statutory entity for lobbying purposes unless expressly and specifically authorized by statute. The Auditor General observed that the college president relied upon s 11.062, F.S. as authority for such expenditures by college personnel; however, since this office in AGO 77-8, concluded that s 11.062 (which by its terms is applicable only to employees of state agencies) did not provide general authority for a district such as a community college district to expend public funds for lobbying, the Auditor General suggested that this matter be referred to the Attorney General.
Supplemental information furnished us by your general counsel urges that subsequent Attorney General's Opinions 83-11 and 83-12, dealing with fringe benefits, and ss 240.317 and 240.319, F.S. "provide a district college board of trustees with more practical broad-based authority than that suggested by the Auditor General."
However, for the following reasons, I am inclined to agree with the position of the Auditor General, and hence, conclude that in regard to your first question, there is no statutory authority for public community colleges to spend college funds for college personnel to attend legislative sessions, committee meetings and to make related contacts with legislators to lobby for or against legislation affecting individual colleges or the community college system as a whole. Accordingly, it is unnecessary to respond to your second question. However, I will note, as did the Auditor General, that it is appropriate for college personnel to respond to and provide information and documentation to the Legislature at its request.
Numerous opinions of the Attorney General have adhered to the general principle that public funds may not be expended by a district or other statutory entity unless there is a specific statutory provision authorizing such expenditure. See, e.g., AGO's 77-8, 75-120, 68-12, 71-28, 78-12, 73-148, 67-20, 74-299. See also, Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A.Fla., 1969), cert. denied, 237 So.2d 530 (Fla. 1979) (to perform any function for the state or to expend any money belonging to the state, the officer seeking to perform such function or to incur such obligation against the state must find and point to a constitutional or statutory provision authorizing him to do so). More specifically, this office has stated that public funds may not be expended by public entities for lobbying purposes unless expressly and specifically authorized by state law. See, AGO 77-8 and authorities cited therein, wherein this office stated that this conclusion, that public funds may not be expended by a statutory entity for lobbying purposes unless expressly and specifically authorized by statute, is consistent with the weight of authority throughout the country.
No provision of Part III of Ch. 240, F.S., offers specific and express statutory authority for the expenditure of college funds for lobbying activities, nor have you drawn to my attention any other statute that furnishes such authority. See also, s 240.359(4) (providing that state funds apportioned to a public community college shall be expended only for the purpose of supporting that college); but cf., s 240.377 (providing that each community college may use a portion of the funds accruing to it from auxiliary enterprises and undesignated gifts for promotion and public relations as prescribed by regulations of the State Board of Education). Note also, s 240.36 (creating the Florida Academic Improvement Trust Fund for Community Colleges, and providing in subsection [1] that the fund shall be used to encourage private support, particularly in the form of challenge grants). Moreover, you have not drawn to my attention any rule of the State Board of Community Colleges or the State Board of Education, enacted pursuant to ss 240.311(2), 240.317, or 240.319(1), F.S., that purports to authorize such lobbying expenditures.
Additionally, the language contained in s 240.319(1) that states that each community college district board of trustees is "vested . . . with such necessary authority as may be needed for the proper operation and improvement thereof . . ." (e.s.) does not in my opinion authorize the above-described lobbying activities. Compare, AGO 77-8 (concluding that by application of the doctrine ejusdem generis, general words such as "other necessary expenditures" which were part of legislation creating a civic facilities authority, should not be interpreted as permitting expenditure of that authority's funds for lobbying); and see, Van Pelt v. Hilliard, 78 So. 693, 697 (Fla. 1918); Ex parte Amos,112 So. 289, 293 (Fla. 1927), the latter decision discussing and applying the maxim "noscitur a sociis," and noting that the doctrine ejusdem generis is merely a "specific application of the broader maxim `noscitur a sociis,'" which means that general and specific words, capable of analogous meaning, when associated together, take color from each other, so that general words are restricted to a sense analogous to the specific words. Note also, AGO 78-12 (concluding that a community college district board of trustees has no inherent or common-law powers, but rather possesses only those powers which have been conferred by statute, and that since there was no statute or regulation of the State Board of Education which expressly authorized a certain expenditure, such expenditure was not permissible); see also, AGO's 79-46, 78-67, 78-68. I also note that reliance on AGO's 83-11 and 83-12 is inappropriate since those opinions are concerned only with interpretation of s 240.319(3)(n), F.S. (1982 Supp.) [currently s 240.319(3)(1)1.] and the term "fringe benefit." In those opinions, the statute under consideration, s 240.319(3)(n), F.S. (1982 Supp.), granted community colleges express authority to provide "fringe benefits" and the only issue presented therein was whether the proposed employment benefit fell within the definition of the term "fringe benefits." Here, however, no provision of Part III of Ch. 240 offers the necessary specific and express authority for lobbying expenditures.
In summary, until legislatively or judicially determined otherwise, it is my opinion that public community colleges are not authorized to expend college funds, including appropriated state funds, for college personnel to attend legislative sessions, committee meetings and to make related contacts with legislators to provide information and lobby for or against legislation affecting individual colleges or the community college system as a whole; however, it is appropriate for college personnel to respond to and provide information and documentation to the Legislature at its request.
Sincerely,
Jim Smith Attorney General
Prepared by:
Anne Curtis Terry Assistant Attorney General